```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION


ALLAN MILLMAKER D/B/A            §
PENTOMINO PRODUCING LLC,         §
                                 §
     Plaintiff,                  §
                                 §
v.                               §    CIVIL ACTION NO. H-07-3837
                                 §
JOE BRUSO AND SOVEREIGN OIL      §
& GAS COMPANY II, LLC,           §
                                 §
     Defendants.                 §
```

MEMORANDUM AND ORDER

Pending is Plaintiff Allan Millmaker d/b/a Pentomino Producing LLC's Motion to Dismiss and Remand and for Sanctions (Document No. 14) and Plaintiff's Request for Expedited Oral Hearing on the Motion to Dismiss (Document No. 15). After having considered the motions, responses, and the applicable law, the Court concludes for the reasons set forth below that Plaintiff's Motion and Request should both be denied.

I. Background

Allan Millmaker ("Millmaker"), a citizen of the United Kingdom, is the president of Pentomino Producing L.L.C. ("Pentomino"). *See* Document No. 14, ex. 1 at 7. Pentomino entered into an Independent Contractor/Consultant Agreement (the "Agreement") with Sovereign Oil & Gas Company II, L.L.C.

("Sovereign"). See id., ex. 1 at 1. The stated purpose of the Agreement was for Pentomino to "provide the services of Mr. Allan Millmaker in the capacity of Senior Upstream Advisor to Sovereign, an independent oil and gas company." Id. "The services [were to] include *significant travel outside of the United States* to, among others, West Africa, Europe, and Asia." Id. (emphasis added). According to the Agreement, Millmaker was to furnish his "best advice, information, judgment and knowledge with respect to the technical and commercial aspects of Sovereign's business and the development of oil and natural gas reserves in West Africa and other countries." Id. The Agreement further provided that Sovereign would "pay for all costs of foreign travel/ medical/evacuation insurance" incurred by Millmaker; that Sovereign would pay for any "travel and lodging" expenses, including "business-class air fare for any non-domestic flight (traveling to or from the United States)," for Millmaker; and that Pentomino had to "secure all legal documents and permits necessary to allow its employees (Millmaker) to work in Africa, Europe, Japan, or Asia, including a passport, valid work permit, and medical certificates." Id. at 1 & 3. In addition, Exhibit "A" of the Agreement listed "Covered Projects," with references to Sudan and Offshore Nigeria only. Id., ex. 1 at ex. A. The Agreement was signed by Allan Millmaker as President of Pentomino and J.M. Bruso as President & CEO of Sovereign. Id., ex. 1 at 7.

2

In 2007, and in accordance with Paragraph Fifteen (15) of the Agreement, an arbitration action was instituted by Sovereign seeking a declaration that it had not breached the Agreement by terminating the contract early; Millmaker counterclaimed for damages for early termination. *See* Document No. 14 at 3. The arbitrator, among other things, granted Millmaker money damages, and on November 9, 2007, he filed a Petition for Confirmation of Arbitration Award by Entry of Final Judgment in Texas state court. Id.; *see also* Document No. 1 at 2. Thereafter, Sovereign removed the case to this Court.

## II.  Discussion

Sovereign alleges this Court has jurisdiction pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), and based on diversity of citizenship and federal question.[1]  *See* Document No. 1 at 3-4. Citing a lack of subject matter jurisdiction, Millmaker moves to remand the enforcement action to state court so that he might enforce the award; he also asks for sanctions against Sovereign for wrongful removal. *See* Document No. 14. According to Millmaker, this Court lacks jurisdiction because Texas law governs the dispute, not the

---

[1] Because this Court has jurisdiction pursuant to the Convention, the merits of Sovereign's alternative theories of jurisdiction are not reached.

Federal Arbitration Act[2] (the "FAA") and the Convention, so removal is improper; there is no diversity; there is no federal question; and the Convention is inapplicable because this is a purely domestic award. *See* id.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 106 S. Ct. 1326, 1331 (1986). Section 205 of the FAA,[3] defines a district court's removal jurisdiction regarding foreign arbitral awards, providing:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205. Whether an "agreement or award fall[s] under the Convention" is determined pursuant to 9 U.S.C. § 202, which states in pertinent part:

---

[2] 9 U.S.C. §§ 1-307.

[3] Title 9, Chapter 2 of the United States Code codifies the laws passed pursuant to the Convention. *See* 9 U.S.C. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.").

> An agreement or award arising out of . . . a [commercial] relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention *unless that relationship involves property located abroad, envisages performance or enforcement abroad*, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202 (emphases added).  Thus, the Convention applies to an agreement if the commercial relationship between two United States citizens[4] "involves property located abroad, envisages performance or enforcement abroad."  *See* Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327 (5th Cir. 2004).  And, as discussed above, if an agreement or award falls under the Convention, the defendants may remove the action to district court. *See* 9 U.S.C. § 205.

In Freudensprung, two United States citizens entered into a consultant's agreement in which one party agreed to effect the purchase of professional services for hook-up, engineering, planning, inspection, and pipeline work in order to discharge the second party's separate contractual obligations to entities seeking such services.  Just as in the instant case, the Freudensprung agreement contained a Texas choice-of-law provision and also an arbitration clause requiring binding arbitration of any dispute in Houston, Texas.  The agreement also expressly incorporated the

---

[4] This Court assumes, without deciding, that, as alleged in the Motion to Dismiss and Remand and for Sanctions, both parties to the Agreement are U.S. citizens.  *See* Document No. 14 at 10, 13-14.

terms of any work order issued to the first party for a particular assignment.  The second party subsequently issued a work order for the first party to work as a barge leaderman in West Africa.  A dispute arose, and the Fifth Circuit was required to decide for the first time whether the Convention applied to an arbitration agreement between two United States citizens.  Applying 9 U.S.C. § 202, the court found that the parties' commercial relationship had some reasonable connection to a foreign state that was independent of the arbitral clause itself.  Id. at 341.  Because the consultant's agreement "envisage[d] performance . . . abroad," the court held that the arbitral clause was enforceable under the Convention as implemented by Congress even though both parties were United States citizens.  *See also* Lander Co. v. MMP Inves., Inc., 107 F.3d 476, 481-82 (7th Cir. 1997) (cited with approval by Freudensprung and holding that the Convention applied to an arbitration agreement between two United States citizens where the contract envisaged performance abroad by one party distributing in Poland the products that the other party manufactured in the United States).

The holdings of Freudensprung and Lander control the instant case.  The Consultant Agreement between Sovereign and Pentomino required Pentomino to furnish its "best advice, information, judgment and knowledge" regarding the development of oil and natural gas reserves in West Africa and other countries.  Clause

No. 1 of the Agreement, the Purpose clause, specifies that Pentomino shall provide the services of Millmaker, and that the services "*will include significant* travel outside of the United States to, among others, West Africa, Europe, and Asia." (emphasis added).  Sovereign is required to pay all reasonable expenses incurred by Pentomino for travel and lodging, including specifically payment in advance for "all business-class air fare for any non-domestic flight (traveling to or from the United States)."  Moreover, Sovereign is required to pay Pentomino for "all costs of foreign travel/medical/evacuation insurance" provided to Pentomino by Sovereign.  Pentomino is required to secure "all legal documents and permits necessary to allow its employees (Millmaker) to work in Africa, Europe, Japan, or Asia, including a passport, valid work permit, and medical certificates."  Exhibit "A" to the Consultant Agreement, entitled "Covered Projects," lists only two items: (1) specific projects to be named after "the Sudan visit of July 2005," and (2) "OPL 229, Offshore Nigeria."  No domestic projects are listed.  In short, similar to Freudensprung, this Consultant Agreement "envisages performance . . . abroad" from its opening clause to its concluding exhibit.  The commercial relationship of the parties described in the Consultant Agreement has a reasonable connection to foreign states independent of the arbitral clause itself.  The Consultant Agreement therefore falls under the Convention, this Court has jurisdiction, and Sovereign

7

properly removed the case. *See* 9 U.S.C. § 205.[5] It follows that Millmaker's request for sanctions against Sovereign for improper removal is also without merit.

### III. Order

Accordingly, it is

ORDERED that Plaintiff Allan Millmaker d/b/a Pentomino Producing LLC's Motion to Dismiss and Remand and for Sanctions (Document No. 14) and Plaintiff's Request for Expedited Oral Hearing (Document No. 15) are both DENIED.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 25th day of January, 2008.

                                              _____
                                                        EWING WERLEIN, JR.
                                                  UNITED STATES DISTRICT JUDGE

---

[5] Pentomino also contends that, because the parties agreed for Texas law to govern all disputes, the FAA should not apply. *See* Document No. 14 at 6-9. This contention lacks merit. *See* 9 U.S.C. § 203; Freudensprung, 379 F.3d at 338, n. 7; Lander Co., Inc., 107 F.3d at 479 (jurisdiction under the Convention is not limited in the manner of the FAA to arbitration agreements or awards that arise out of disputes that could be litigated in federal court); Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte, 141 F.3d 1434, 1440 (11th Cir. 1998) ("Chapter 2 of the [FAA], 9 U.S.C. §§ 201-208, mandates the enforcement of the . . . Convention in United States courts.").