IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLAN MILLMAKER d/b/a | § | |
| PENTOMINO PRODUCING L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3837 |
| | § | |
| JOSEPH BRUSO, and SOVEREIGN | § | |
| OIL & GAS COMPANY II, L.L.C., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

This action was filed to obtain confirmation of an arbitral award. Pending are Plaintiff Allan Millmaker's, d/b/a Pentomino Producing, L.L.C., Motion for Summary Judgment (Document No. 41) and Defendants Joseph Bruso and Sovereign Oil & Gas Co. II, L.L.C.'s Motion for Summary Judgment (Document No. 26). After having considered the motions, responses, replies, and the applicable law, the Court concludes for the reasons that follow that the arbitral award, as corrected hereinbelow, should be confirmed except as to Defendant Joseph Bruso, a non-party to the arbitration agreement.

I.  Background

Pentomino Producing L.L.C. ("Pentomino"), entered into an Independent Contractor/Consultant Agreement (the "Agreement") with Sovereign Oil & Gas Company II, L.L.C. ("Sovereign"), to "provide

the services of Mr. Allan Millmaker ("Plaintiff") in the capacity
of Senior Upstream Advisor to Sovereign, an independent oil and gas
company." *See* Document No. 41, ex. A ¶ 1.   The Agreement was
executed by Allan B. Millmaker, as President of Pentomino, and J.M.
Bruso, Jr. ("Bruso"), as President and Chief Executive Officer of
Sovereign.   Id., ex. A at 7.   The Agreement contained an arbitra-
tion clause, which in relevant part reads:

> [A]ny dispute arising out of or related to this Agreement
> or related to the alleged breach of this Agreement shall
> be resolved by submitting the matter to final and binding
> arbitration, and in no other forum.   This includes . . .
> any disputes pertaining to the meaning or effect of this
> Agreement.   The arbitration shall be held in Texas and
> shall proceed in accordance with the rules and practices
> of the American Arbitration Association.   The costs of
> such arbitration shall be borne equally by the parties.
> The arbitrator shall have no authority to modify or amend
> any provision of this Agreement.

Id., ex. A ¶ 15.

In 2007, after Sovereign gave notice to Plaintiff that he was
fired, Sovereign instituted an arbitration proceeding seeking a
declaration that Plaintiff breached the Agreement but that
Sovereign had not; Plaintiff counterclaimed alleging that Sovereign
breached the Agreement while he had not.   *See* id., ex. A  ¶ 15;
Document No. 26, exs. 1, 4, 5, 14.   On November 7, 2007, an
arbitrator at the International Centre for Dispute Resolution
("ICDR") entered an award: (1) ordering Plaintiff to return to
Sovereign documents containing confidential information in his

possession; (2) declaring that Sovereign did not breach the Agreement with respect to performance bonuses; (3) granting Plaintiff a recovery of $126,000.00 on his claim for breach of contract for failure to give timely notice of termination of the Agreement; (4) denying Sovereign's request for attorneys' fees from Plaintiff; (5) granting Plaintiff a recovery of $128,754.23 for expenses and attorneys' fees; (6) denying Plaintiff's request for exemplary damages; (7) granting Plaintiff a recovery of $14,500 for administrative fees and expenses of the ICDR and fees of the arbitrator incurred by Plaintiff; and (8) as sanctions, holding Bruso jointly and severally liable with Sovereign for payment to Plaintiff of the above referenced awards of $128,754.23 and $14,500. *See* Final Award of Arbitrator ("Final Award"), at 2-3.

Plaintiff moves for summary judgment confirming the award *in toto*, and Defendants seek to vacate the award in part. *See* Document Nos. 41, 26.[1] Specifically, Defendants seek to vacate: (1) the sanction against Bruso making him "jointly and severally" liable for Plaintiff's attorneys' fees, expenses, administrative fees of the ICDR, and compensation of the arbitrator; and (2) the award against Sovereign for attorneys' fees, expenses,

---

[1] It appears that Sovereign during the pendency of this case paid to Plaintiff the $126,000 awarded to Plaintiff for Sovereign's breach of contract. That the arbitral award should be confirmed against Sovereign for its breach of contract is therefore not in dispute.

administrative fees of the ICDR, and the compensation of the
arbitrator.  *See* Document No. 26 ¶¶ 4-9.

## II.  <u>Standard of Review</u>

"[A] district court's review of an arbitration award is
extraordinarily narrow" and "exceedingly deferential."  <u>Prestige</u>
<u>Ford v. Ford Dealer Computer Servs., Inc.</u>, 324 F.3d 391, 393 (5th
Cir. 2003); *see also* <u>Kergosien v. Ocean Energy, Inc.</u>, 390 F.3d 346,
352 (5th Cir. 2004).  "[F]ederal courts must defer to the
arbitrator's decision when possible."  <u>Am. Laser Vision, P.A. v.</u>
<u>Laser Vision Inst., L.L.C.</u>, 487 F.3d 255, 258 (5th Cir. 2007)
(internal quotation marks omitted).  The party moving to vacate the
arbitral award bears the burden of proof.  *See* <u>*In re* Arbitration</u>
<u>Between Trans Chem. Ltd. & China Nat'l Mach. Import & Export Corp.</u>,
978 F. Supp. 266, 303 (S.D. Tex. 1997) (Lake, J.), *aff'd*, 161 F.3d
314 (5th Cir. 1998).

"[W]hatever indignation a reviewing court may experience in
examining the record, it must resist the temptation to condemn
imperfect proceedings without a sound statutory basis for doing
so."  <u>Prestige Ford</u>, 324 F.3d at 394.  The statutory bases for
vacating an arbitration award are set forth in the Federal
Arbitration Act:

> (1)  where the award was procured by corruption, fraud,
>      or undue means;

      (2)  where there was evident partiality or corruption in the arbitrators, or either of them;

      (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

      (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*See* 9 U.S.C. § 10.  Besides those statutory grounds, the Fifth Circuit has recognized two further bases for vacatur: manifest disregard of the law and contrary to public policy.  <u>Kergosien</u>, 390 F.3d at 353.  In <u>Hall Street Assocs., L.L.C. v. Mattel, Inc.</u>, 128 S. Ct. 1396, 1403 (2008), however, the Supreme Court recently held that §§ 10 and 11 respectively provide the Federal Arbitration Act's "exclusive grounds for expedited vacatur and modification." To resolve a split in the circuits, the Court held that parties may not contract for expanded judicial review, reasoning that its strict adherence to the text of §§ 9-11 substantiated "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."  <u>Id.</u> at 1405.  This Court has observed that <u>Hall Street Assocs.</u> at least puts in question the Fifth Circuit's previous recognition of a nonstatutory ground for vacatur based on "manifest disregard."  <u>Halliburton Energy Servs., Inc. v. NL</u>

Indus., 553 F. Supp. 2d 733, 751-53 (S.D. Tex. 2008).  It is also well established that an award may not be vacated even if it is arbitrary and capricious.  Brabham v. A.G. Edwards & Sons Inc., 376 F.3d 377, 385 (5th Cir. 2004).

## III.   Discussion

### A.   Whether the Arbitrator Exceeded His Authority

"'Arbitration is a matter of contract': The powers of an arbitrator are 'dependent on the provisions under which the arbitrators were appointed.'"   Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 401 (5th Cir. 2007) (quoting Brook v. Peak Int'l, 294 F.3d 668, 672 (5th Cir. 2002)).  If an arbitrator acts contrary to express contractual provisions, he has exceeded his powers.  Id. (citing Delta Queen Steamboat Co. v. AFL-CIO, 889 F.2d 599, 604 (5th Cir. 1989)).  However, when an arbitration agreement vests an arbitrator with the authority to interpret a contract, his construction must be enforced so long as it is "'rationally inferable from the letter or purpose of the underlying agreement.'" Glover v. IBP, Inc., 334 F.3d 471, 474 (5th Cir. 2003) (quoting Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994)).  An award is rationally inferable from the underlying contract if it "in some logical way, [is] derived from the wording or purpose of the contract."  Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co., 918 F.2d 1215, 1218 (5th Cir. 1990) (internal

6

quotation marks omitted).   "Where limitations on the arbitrator's authority are uncertain or ambiguous . . . 'they will be construed narrowly.'"   Apache, 480 F.3d at 402 (quoting Action Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 343 (5th Cir. 2004)).   All doubts whether an arbitrator exceeded his authority must be resolved in favor of arbitration.   Kergosien, 390 F.3d at 355; Executone, 26 F.3d at 1320-21.

### 1.   Sanctions Against Bruso Personally

Defendants first contend that the arbitrator exceeded his authority when he sanctioned Bruso because Bruso was not a party to the arbitration.   *See* Document No. 26 ¶¶ 18-37.   The Agreement itself is silent on whether an arbitrator has power to sanction a nonparty.[2]   The arbitration clause in the Agreement, however, does incorporate "the rules and practices of the American Arbitration Association" (the "AAA").   *See* Document No. 41, ex. A ¶ 15. According to the rules of the ICDR,[3]

---

[2] Contrary to Plaintiff's contention, the evidence does not establish that the arbitrator interpreted the contract to allow him to sanction a nonparty.   To the contrary, the arbitrator in a mere *ipse dixit* pronounced, "The Arbitrator has the authority to impose a monetary sanction against Bruso personally."   Final Award, at 12.

[3] The ICDR is the international division of the AAA, under which this arbitration was conducted.   According the ICDR rules, "the arbitration shall take place in accordance with [the ICDR rules], as in effect at the date of commencement of the arbitration, subject to whatever modifications the parties may adopt in writing."   *See* Document No. 41, ex. F (ICDR Rules art. 1(a)).

7

> Unless the parties agree otherwise, the parties expressly
> waive and forego any right to punitive, exemplary or
> similar damages unless a statute requires that
> compensatory damages be increased in a specified manner.
> This provision shall not apply to any award of
> arbitration *costs to a party* to compensate for dilatory
> or bad faith conduct in the arbitration.

*See* Document No. 41, ex. F (ICDR Rules art. 28(5)) (emphasis added).   The ICDR article governing "costs," in turn, provides: "The tribunal shall fix the costs of arbitration in its award.   The tribunal may apportion such costs *among the parties* if it determines that such apportionment is reasonable, taking into account the circumstances of the case."   <u>Id.</u>, ex. F (ICDR Rules art. 31) (emphasis added).   In other words, the ICDR rules allow arbitrators reasonably to shift arbitration costs "among the parties" based on the arbitrator's assessment of the circumstances of the case, and may also order costs paid as a sanction for "dilatory or bad faith conduct."   Therefore, although the ICDR rules grant the arbitrator sanction powers at least to that extent, the only persons or entities potentially subject to apportioned costs as a sanction are *parties to the arbitration*.   Thus, neither the Agreement nor the incorporated rules governing the arbitration authorize the arbitrator to sanction a nonparty.

Plaintiff's other argument is that arbitrators have a judicial-like inherent authority to impose sanctions.   For this proposition Plaintiff relies on <u>Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.</u>, 915 F.2d 1017, 1023 n.8 (5th Cir. 1990) (noting in

response to a *party's* conduct that "[a]rbitrators may . . . devise appropriate sanctions for abuse of the arbitration process"). Plaintiff has cited no authority, however, holding that an arbitrator can sanction a *nonparty*--nor has this Court found any. Indeed, the authorities relied upon by Plaintiff support only the conclusion arbitrators can sanction parties--not nonparties.[4]

A fundamental principle of arbitration is that an arbitrator's authority is circumscribed by the agreement of the parties.  *In re Arbitration Between InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochems. AG*, 373 F. Supp. 2d 340, 356-59 (S.D.N.Y. 2005)

_____

[4] *See* Document No. 41 at 8-9 & nn.44-49; Bigge Crane & Rigging Co. v. Docutel Corp., 371 F. Supp. 240, 246 (E.D.N.Y. 1973) (commenting in dicta, without citation or authority, that "arbitrators . . . may be able to devise sanctions if they find that [*a party*] has impeded or complicated their task by refusing to cooperate in pretrial disclosure of relevant matters" (emphasis added)); *accord* Forsythe, 915 F.2d at 1023 n.8 (citing only Bigge Crane); First Pres. Cap., Inc. v. Smith Barney, Harris Upham & Co., 939 F. Supp. 1559, 1565-67 (S.D. Fla. 1996) (affirming an arbitrator's dismissal of a *party's* case for abuses of the discovery process); Pisciotta v. Shearson Lehman Bros., Inc., 629 A.2d 520, 524-25 (D.C. 1993) (acknowledging that "[c]ourts have recognized the authority of arbitrators to impose sanctions, presumably including costs and attorney's fees, for misconduct such as discovery abuses revealed during the arbitration proceeding," citing only Bigge Crane and Forsythe); Young v. Roos-Loos Med. Group, 185 Cal. Rptr. 536, 538 (Cal. Ct. App. 1982) (holding that a state district court should have enforced an arbitrator's award of default dismissal against a *party* because of dilatory prosecution); *see also* In re Arbitration Between InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochems. AG, 373 F. Supp. 2d 340, 356-59 (S.D.N.Y. 2005) (holding that an arbitrator exceeded his authority in sanctioning a nonparty attorney, and explaining that the authorities relied upon by the party seeking enforcement of the sanction--Bigge Crane, Forsythe, Pisciotta, First Preservation, among others--were distinguishable or inapposite).

("[A]rbitration is a consensual arrangement meant to reflect a mutual agreement to resolve disputes outside of the courtroom.").[5] Bruso signed the Agreement as President and Chief Executive Officer of Sovereign, not as an individual party to the Agreement. *See* Document No. 41, ex. A at 7. Thus, he never agreed in a personal capacity to "final and binding" arbitration of any dispute he might have, nor to submit to or to be bound by the decision of any arbitrator. Id. His execution of the Agreement was solely in a representative capacity, and bound only Sovereign, not Bruso, to "final and binding" arbitration. The arbitrator cannot under these facts treat Bruso as being personally subject to his authority under an arbitration agreement to which Bruso himself is not a party. *See* InterChem, 373 F. Supp. 2d at 356-59 (holding that an arbitrator exceeded his authority in sanctioning a nonparty attorney).[6]

---

[5] Plaintiff contends that Defendants' reliance on InterChem is misplaced because InterChem is distinguishable insofar as the arbitration in InterChem was governed by the AAA's Commercial Arbitration rules, "which provide[] that the arbitrator could only grant any remedy or relief that was within the scope of the agreement between the parties," and thus precludes sanctions not contemplated by the agreement. *See* Document No. 55 ¶¶ 15-18. Plaintiff's contention is without merit. Like the ICDR rules, the Commercial Arbitration Rules state that in the final award "[t]he arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate." *See* AAA Commercial Rule 43(c).

[6] *See also* Richard H. Kreindler, *Court Intervention in Commercial and Construction Arbitration: Approaches in the U.S. and Europe*, 13 CONSTRUCTION LAW. 12, 15 (Oct. 1994) ("Generally, a tribunal has no power over nonparties to the arbitration

Therefore, the arbitrator exceeded his power in violation of § 10(a)(4) when he sanctioned nonparty Bruso individually-- regardless of how reprehensible Bruso's conduct may have been.  The arbitral award against Bruso individually must therefore be VACATED.

2.  <u>Award of Attorneys' Fees, Expenses, and Arbitration Costs to Plaintiff</u>

Defendants argue that the arbitrator exceeded his authority in awarding to Plaintiff attorneys' fees, expenses, and arbitration costs because his award was contrary to Paragraphs 11 and 15 of the Agreement.  *See* Document No. 26 at 14-22.  Paragraph 11 provides:

> <u>Disclaimer of Liability and Release</u>.  Neither Sovereign nor any of its shareholders . . . shall be liable for any liability, damages (whether actual, consequential, special or punitive), claim, expense, fee, or cost incurred in connection with or arising from the work of

---

agreement."); Seth E. Lipner, *Third Party Discovery and Subpoenas in Arbitration*, 1440 PRACT. L. INST. CORP. 503, 506 (2004) ("The clear import of Section 7 of the F.A.A. is to provide, in arbitration, the power to subpoena non-parties, i.e. those who are not otherwise subject to the arbitrators' jurisdiction.  Parties, of course, are already subject to sanction by the arbitrators by virtue of the agreement to arbitrate.  But since non-parties have not, by contract, subjected themselves to the jurisdiction of the arbitrators, they cannot be held in contempt by the arbitrators."); Norman B. Arnoff, *Attorney Sanctions in Securities Arbitration*, 1440 PRACT. L. INST. CORP. 535, 538-40 (2004) (recognizing the difference between courts, which have inherent authority to sanction, and arbitrators, which arguably do not, in regards to a proposed amendment to the National Association of Securities Dealer's Code of Arbitration Procedure for Customer Disputes expressly granting arbitrators the authority to sanction nonparty attorneys).

> Independent Contractor, other than those fees and
> reimbursements specifically set forth in Paragraph 4 of
> this Agreement.    Independent Contractor releases
> Sovereign and its shareholders . . . from all liability,
> damages (whether actual, consequential, special or
> punitive), claims, expenses, fees, or costs incurred in
> connection with or arising from the work of the
> Independent Contractor, other than those fees and
> reimbursements specifically set forth in Paragraph 4 of
> this Agreement.

Document No. 41, ex. A ¶ 11.  The clause relied on by Sovereign in Paragraph 15 provides:  "The costs of such arbitration shall be borne equally by the parties."  Id., ex. A ¶ 15.  In essence, Defendants claim that the arbitrator exceeded his authority by not construing Paragraphs 11 and 15 as limitations upon his power to apportion the costs of the arbitration.  The Court disagrees.

The arbitration clause in the Agreement gives the arbitrator the power to decide "any disputes pertaining to the meaning or effect of this Agreement."  See id., ex. A ¶ 15.  The correct interpretation of Paragraphs 11 and 15 were disputed at the arbitration.  "[Sovereign] objected to [Plaintiff's] claim for attorney's fees" on the basis that the claim was barred by Paragraph 11.  See Document No. 26 ¶ 50 (citing Id., ex. 14 ¶ 14). In addition, the parties disputed whether Paragraph 15 precluded cost shifting by the arbitrator at the conclusion of the arbitration proceeding.  See id., ex. 13 at 1440-45.  Thus, the dispute over these provisions was argued to the tribunal vested with authority to interpret the contract.

During arguments made by the parties, the arbitrator observed the express authority conferred upon him by the ICDR rules, adopted by the parties in the arbitration clause itself,[7] to "fix the costs" and to "apportion such costs among the parties if it determines that such apportionment is reasonable taking into account the circumstances of the case."   ICDR Rules art. 31.   In examining Paragraph 15's proviso that "the cost of such arbitration shall be born equally by the parties," and reconciling it with Paragraph 15's adoption of the ICDR's rule authorizing apportionment of costs, the arbitrator evidently viewed the sharing "equally" clause as applying during pendency of the proceeding itself, i.e., each party equally bearing the interim fees of the arbitrator, etc., but with the arbitrator having full authority at the end of the arbitration to apportion those costs.   *See* Document No. 26, ex. 13 at 1440-45.

"Although the [C]ourt might not have reached the same conclusion regarding [the Paragraphs'] applicability, this is not the test."   Torch E&P Co. v. J.M. Huber Corp., Civil Action No. H-06-1786, 2006 WL 3761814, at *3-4 (S.D. Tex. Dec. 20, 2006) (Lake, J.) (affirming an arbitral award where the arbitrator interpreted the governing agreement not to preclude the eventual award), *aff'd*, 234 F. App'x 231 (5th Cir. 2007), *cert. denied*, 128

---

[7] "The arbitration . . . shall proceed in accordance with the rules and practices of the American Arbitration Association." Document No. 41, ex. A ¶ 15.

S. Ct. 1074.  "[T]he question of interpretation of the [Agreement] is a question for the arbitrator.  *It is the arbitrator's construction which was bargained for;* and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his."  <u>Kergosien</u>, 390 F.3d at 353 (emphasis in original).  The court should not "impermissibly substitute[] its own construction of the Agreement over the [arbitrator's]."  *In re* <u>Heritage Org., L.L.C.</u>, Civil No. 3:06-CV-0578-H, 2006 WL 2642204, at *5-7 (N.D. Tex. Sept. 14, 2006) (affirming an arbitral award refusing to split costs where the agreement provided "costs and expenses of the arbitrators for any arbitration shall be split evenly" between the parties); <u>NetKnowledge Techs., L.L.C. v. Rapid Transmit Techs.</u>, Civil Action No. 3:02-CV-2406-M, 2007 WL 518548, at *6 (N.D. Tex. Feb. 20, 2007) (concluding that an agreement's broad language, which gave the arbitrator authority to resolve "[a]ny disputes arising under or relating to" the agreement, permitted the arbitrator to interpret the arbitration agreement in such a way as to not give effect to a limitation of liability clause and a merger clause), *aff'd*, 269 F. App'x 443 (5th Cir. 2008).

In sum, the arbitrator's authority to award attorneys' fees, expenses, and costs depended upon his interpretation of the contract and there is no question that his right to interpret the

14

contract is rationally inferable from the wording of the parties'
Agreement and its arbitration clause.   The arbitrator did not
exceed his authority in entering an award of those fees, expenses,
and costs.

B.    Whether the Arbitrator Manifestly Disregarded the Law[8]

    The Fifth Circuit has held:

> [M]anifest disregard for the law "means more than error
> or misunderstanding with respect to the law.  The error
> must have been obvious and capable of being readily and
> instantly perceived by the average person qualified to
> serve as an arbitrator.  Moreover, the term 'disregard'
> implies that the arbitrator appreciates the existence of
> a clearly governing principle but decides to ignore or
> pay no attention to it."

Kergosien, 390 F.3d at 355 (quoting Prestige Ford, 324 F.3d at
395).  A two-step test has been articulated for this challenge.
First, the disregarded law must be "well defined, explicit, and
clearly applicable."  Prestige Ford, 324 F.3d at 395.  A party
requesting vacatur "must point to a controlling case with a clear
rule ignored by the arbitrator."  Apache, 480 F.3d at 408-09.  For
the second step, "before an arbitrator's award can be vacated, the
court must find that the award resulted in a significant

---

    [8] Inasmuch as the Fifth Circuit has not ruled what effect, if
any, Hall Street Assocs. will have on the Circuit's manifest
disregard precedent, the Court will consider Defendants' argument
that the arbitrator manifestly disregarded the law.

injustice." Kergosien, 390 F.3d at 355 (internal quotation marks omitted).

Defendants contend that "[t]he arbitrator's award of attorney's fees was made in manifest disregard for the law" because Plaintiff's demand "was excessive." *See* Document No. 26 ¶ 59. Under Texas law, an "excessive demand" is an affirmative defense that must be pled or is waived, and the evidence must show bad faith or unreasonableness in making the demand. Kurtz v. Kurtz, 158 S.W.3d 12, 21 (Tex. App.--Houston [14th Dist.] 2004, pet. denied). There is no showing by Defendants that the arbitrator found that Plaintiff made an excessive demand as declared by Texas law or that the arbitrator deliberately ignored a well-defined rule of law when he awarded Plaintiff recovery of his attorneys' fees. There is no showing of a manifest disregard for the law by the arbitrator.

Defendants also argue that the arbitrator "exceeded his authority in awarding all of Millmaker's attorneys' fees against Sovereign, without any apportionment according to the single claim on which Millmaker prevailed." Document No. 26 ¶ 54. According to Texas law, a party may recover reasonable attorneys' fees on a contract claim. TEX. CIV. PRAC. & REM CODE ANN. § 38.001(8) (Vernon 1997). To recover attorneys' fees, a party must first prevail on his contract claim, then recover damages. Green Int'l Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). However, "if any

attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." <u>Tony Gullo Motors I, L.P. v. Chapa</u>, 212 S.W.3d 299, 313 (Tex. 2006). An "exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" <u>Id.</u> at 311 (quoting <u>Flint & Assocs. v. Intercont. Pipe & Steel, Inc.</u>, 739 S.W.2d 622, 624-25 (Tex. App.--Dallas 1987, writ denied); *see also* <u>A.G. Edwards & Sons, Inc. v. Beyer</u>, 235 S.W.3d 704, 710 (Tex. 2007) ("It is only when legal services advance both recoverable and unrecoverable claims that the services are so intertwined that the associated fees need not be segregated.").

The arbitrator awarded $128,754.23 in expenses and attorneys' fees based upon Plaintiff prevailing on its contract claim for $126,000. In doing so, the arbitrator explained that the breach of contract claim "would have been relatively simple," and an award commensurate with only that claim might have been reasonable had the proceeding not become so complicated, protracted, and intertwined with other issues as a result of Sovereign's conduct. Final Award, at 10. The arbitrator criticized Sovereign's behavior from the start, finding that when Plaintiff served demand letters upon Sovereign containing "weighty claims" for breach of contract,

17

Sovereign responded "over-the-top" by characterizing Plaintiff's claims as "'false', 'baseless', 'outlandish', 'frivolous', 'spurious', 'misleading', 'absurd', 'fatally flawed', 'grossly inaccurate', 'extortion' and 'unlawful.'" Final Award, at 9 n.12. Moreover, upon sending that response letter, Sovereign immediately commenced the arbitration, seeking a declaratory judgment that Sovereign had not breached the contract. The arbitrator concluded that Sovereign had done this as a "strategic move, in its mind, to assert control over the process and to take momentum away from [Plaintiff]." Id., at 9. The arbitrator went on to criticize the "strategy and tactics employed by [Sovereign] in responding, or failing to respond, to properly-propounded discovery requests." Id., at 11. He found from the evidence that "[Sovereign's CEO] Bruso was playing fast-and-loose with the production process, producing documents only when it served his or [Sovereign's] interest. . . . It seemed as though every witness sparked new revelations of documents that had not been produced . . . ." Id., at 11. The arbitrator concluded:

> [B]ecause [Sovereign] sought to control the tempo of the case and the presentation of evidence, it is virtually impossible to separate out time spent on the unsuccessful claim with respect to performance bonuses. Moreover, *many* hours of hearing were spent in dealing with [Sovereign's] failure to completely and timely discharge its obligation to produce all documents requested by [Plaintiff], unnecessarily multiplying these proceedings at considerable cost to [Plaintiff]. All of these factors militate in favor of granting [Plaintiff] his

18

full measure of expenses and attorneys' fees requested
and proved.

Final Award, at 10 (emphasis in original).

In a footnote to the foregoing paragraph, the arbitrator noted
that Sovereign also had opposed a realignment of the parties
intended to simplify trial of the breach of contract claim and,
instead, insisted that Sovereign put on its case first.  "This
resulted in the hearing jumping from issue to issue and back again,
multiplying the hearing time considerably."  Id., at 10 n.14.

It is not for this Court to determine a reasonable award of
expenses and fees or to opine on whether the arbitrator's award was
reasonable, but only to judge whether the arbitrator exceeded his
authority or acted in manifest disregard of the law.  Indeed, on
this record presenting intertwined claims arising out of the same
transaction--and especially given the atrocious behavior of
Sovereign that so complicated, obstructed, and protracted the
proceedings--there is no showing that the arbitrator "ignore[d] or
pa[id] no attention to" governing law, Kergosien, 390 F.3d at 355
(quoting Prestige Ford, 324 F.3d at 395), or that he exceeded his
authority.

C.   Whether the Arbitrator Erred in Calculating the Arbitration
     Expenses

Defendants contend that the arbitrator made a material
miscalculation by awarding reimbursement to Plaintiff of certain

19

administrative fees and expenses of the ICDR and compensation paid to the arbitrator, not only in the $14,500 award but also in the $128,754.23 award.  *See* Document No. 26 ¶¶ 41-42.   Courts are permitted to modify an arbitral award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award."  9 U.S.C. § 11(a); NetKnowledge Techs., L.L.C., Civil Action No. 3:02-CV-2406-M, 2007 WL 518548, at *6 (modifying an arbitral award where the arbitrator awarded certain costs twice). An evident material miscalculation occurs "'where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award.'" Valentine Sugars, Inc. v. Donau Corp., 981 F.2d 210, 214 (5th Cir. 1993) (quoting Nat'l Post Office v. U.S. Postal Serv., 751 F.2d 834, 843 (6th Cir. 1985)).   The Fifth Circuit "interpret[s] the term 'undisputed' to mean [a court] should look to see whether there is any rational basis for disputing the truth of the fact." Id.; Prestige Ford, 324 F.3d at 396.

The specific award of $14,500 was stated by the arbitrator to reimburse those portions of the ICDR administrative fees and expenses and of the compensation paid to the arbitrator which were incurred by Plaintiff.  *See* Final Award, at 3.  The arbitrator's separate award of $128,754.23 for "expenses and attorneys' fees"

has as its evidentiary support the affidavit submitted to the arbitrator by Plaintiff's counsel, dated October 26, 2007. *See* Document No. 26, ex. 12 (Corrected Fee Affidavit of Katherine T. Mize). This affidavit includes $21,247.23 in expenses through October 24, 2007, and itemizes those expenses in an attachment to the affidavit. The expenses include: (i) a mediation fee in the amount of $2,750 paid to the ICDR; (ii) an arbitrator/mediator's fee in the amount of $2,500 paid to the American Arbitration Association; and (iii) a mediation fee in the amount of $6,750 paid to the American Arbitration Association. Sovereign contends that these fees for administrative costs and arbitrator's fees paid by Plaintiff, and included in the total expense and fee award of $128,754.23, were double counted because the arbitrator made a separate award of $14,500 to Plaintiff for those same costs. Sovereign's analysis and argument that these items were double counted is implicitly conceded by Plaintiff, who has not contested the argument. The Court finds that the record is unambiguous and undisputed that the three items listed above, totaling $12,000, for ICDR fees and arbitrator's fees were included in the award of $128,754.23. This amounted to a double counting of that sum inasmuch as the arbitrator separately awarded to Plaintiff $14,500 specifically to reimburse ICDR and arbitrator's fees and expenses incurred by Plaintiff. Accordingly, the award for attorneys' fees

and expenses will be REDUCED by $12,000 to a total figure of $116,754.23.  *See* 9 U.S.C. § 11(a).

D.   Plaintiff's Request for Attorney Fees Arising out of the Enforcement Action

Plaintiff requests reimbursement of the attorneys' fees for this enforcement proceeding. "A party to an arbitral award is not entitled to the attorney's fees it incurs in enforcing that award unless the noncomplying party's refusal to abide by the award was 'without justification.'"  Amalgamated Meat Cutters & Butchers Workmen of N. Am. AFL-CIO, Local Union 540 v. Great W. Food Co., 712 F.2d 122, 125 (5th Cir. 1983) (quoting Bell Prod. Engineers v. Bell Helicopter Textron, 688 F.2d 997, 999 (5th Cir. 1982)). Nonfrivolous challenges as to the arbitrator's authority are not "without justification."  *See* Glover, 334 F.3d at 477 (citing Executone, 26 F.3d at 1331)).  Defendants here made nonfrivolous challenges to the arbitrator's authority and, therefore, Plaintiff's request for attorneys' fees arising out of this enforcement action is DENIED.

E.   Plaintiff's Request for Pre-Judgment Interest

Plaintiff's request for pre-judgment interest is without merit.  *See* Document No. 41 at 25.  When an arbitration agreement is "all encompassing," pre-judgment interest, if it is to be awarded, must be requested of and awarded by the arbitrator.  *See*

22

<u>Glover</u>, 334 F.3d at 477 (when an agreement is all encompassing "'intervention by the court to award additional relief would be inconsistent with the language and policy of the Federal Arbitration Act.'" (quoting <u>Schlobohm v. Pepperidge Farm, Inc.</u>, 806 F.2d 578, 580-81 (5th Cir. 1986)).   Here, the Agreement is "all encompassing," stating that "*any* dispute arising out of or related to this Agreement . . . shall be resolved by submitting the matter to final and binding arbitration." *See* Document No. 41, ex. A ¶ 15 (emphasis added).   Plaintiff's request for prejudgment interest is denied.

## IV.   <u>Order</u>

Accordingly, it is

ORDERED that Defendants Joseph Bruso and Sovereign Oil & Gas Co. II, L.L.C.'s Motion for Summary Judgment (Document No. 26) is GRANTED in part, as follows: the arbitral award against nonparty Joseph Bruso in his personal capacity is VACATED, and the award of $128,754.23 for expenses and attorneys' fees against Defendant Sovereign is MODIFIED and CORRECTED to the sum of $116,754.23; and Defendants' Motion for Summary Judgment is otherwise DENIED; and it is further

ORDERED that, except to the extent the arbitral award has been vacated in part and modified and corrected, as set forth above, Plaintiff Allan Millmaker's, d/b/a Pentomino Producing, L.L.C.,

23

Motion for Summary Judgment (Document No. 41) is GRANTED, and the arbitral award, as modified and corrected above, is CONFIRMED, including the monetary portions of the award in favor of Plaintiff Alan Millmaker d/b/a Pentomino Producing, L.L.C. against Defendant Sovereign Oil and Gas Co. II, L.L.C., in the amounts of $126,000 for breach of contract, $116,754.23 for expenses and attorneys' fees, and $14,500 for ICDR fees and compensation for the arbitrator incurred by Plaintiff, for a total award of $257,254.23, against which Defendant Sovereign shall have credit for $126,000 previously paid to Plaintiff; and it is further

ORDERED that Plaintiff Alan Millmaker d/b/a Pentomino Producing, L.L.C. is entitled to a Final Judgment against Defendant Sovereign in the amount of $131,254.23, together with post-judgment interest at the legal rate.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 9th day of October, 2008.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE